**THE SEHAT LAW FIRM, PLC**
Cameron Sehat, Esq. (SBN 256535)
Jeffrey Mikel, Esq
5100 Campus Drive, Suite 200
Newport Beach, CA 92612
Telephone: (949) 825-5200
Facsimile: (949) 313-5001
Email; cameron@sehatlaw.com

**LAW OFFICES OF SANFORD JOSSEN**
136 Main St. Suite E
El Segundo, CA 90245
Tel: 310-546-9118
Fax: 310-546-4208
jossenlaw@aol.com

Attorneys for Plaintiffs, Michael Smith,  J.S. 1, J.S. 2, J. S. 3,, Individually And As Successors-In-Interest To Angela Yvette Benavidez, J.S. By And Thru Their Guardian Ad Litem Josephine Carol Sarenan and Individually;

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL SMITH, individually and as Successor-in-Interest to the Estate of ANGELA YVETTE BENAVIDEZ; J.S. 1, J.S.2 and J.S.3, all minors, individually and as successors-in-interest to ANGELA YVETTE BENAVIDEZ, by and thru their Guardian Ad Litem JOSEPHINE CAROL SARENAN; JOSEPHINE CAROL SARENAN, individually;

                 Plaintiffs,

         vs.

COUNTY OF LOS ANGELES, a government entity; DOES 1-4, individually; DOES 5-8 individually; and DOES 9-10 inclusive,

                 Defendants.

Case No.: 2:25-CV-3247

**COMPLAINT FOR DAMAGES:**

1. **Deliberate Indifference to a Substantial Risk of Harm to Health Per 14th Amendment & *Gordon v. County of Orange* claim)**
2. **Excessive Force per 4th Amendment -42 U.S.C. 1983**
3. ***Monell*-Failure to Train (42 U.S.C. §1983)**
4. ***Monell*- Unconstitutional Custom, Practice and Policy -42 U.S.C. §1983**
5. **Supervisory Liability per 42 U.S.C. 1983**
6. **14Th Amendment-Interference With Familial Relations - 42 U.S.C. § 1983**
7. **Negligence –Wrongful Death (State)**
8. **Bane Act C.C. 52.1 Et Seq. (State)**
9. **Failure to Summon Medical Care (California Government Code § 845.6)**
**DEMAND FOR JURY TRIAL**

## **PRELIMINARY STATEMENT**

1.  Plaintiffs J.S 1 (Dob 10/17/2007), J.S.2 (Dob 5/28/2010) and J.S.3 (Dob 07/01/2011) are three minor children and successors-in-interest to Angella Yvette Benavidez (hereinafter referred to as "BENAVIDEZ" or "Ms. Benavidez" or "Decedent". The minors' claims are asserted by and through their guardian ad litem, Josephine Carol Sarenan. A petition to appoint Josephine Carol Sarenan as guardian ad litem is concurrently filed with this complaint.

2.  Plaintiffs, on behalf of BENAVIDEZ, an inmate at the Lynwood Women's jail (hereinafter LWJ), operated by the Los Angeles County Sheriff's Department, bring this action against the County of Los Angeles ("COUNTY"), jail medical staff DOES 5-8 and jail deputies DOES 1-4 and DOES 9 through 10 for monetary damages to redress for BENAVIDEZ' injuries and death resulting from Defendants' deliberate indifference to her constitutional rights and liberties. Plaintiffs bring this action under the Fourteenth Amendment of the United States Constitution and the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983, for injuries and death suffered as a result of the Defendants' substantial and deliberate indifference to BENAVIDEZ's health and welfare while in their custody. Plaintiffs further bring their 14th Amendment deliberate indifference claim under the recent 9th Circuit Court of Appeals decision in *Gordon v. County of Orange et al. 888 F.3d 1118 (April 30, 2018) (Gordon I)* which established a new standard of proof for the deliberate indifference to a pretrial detainee's serious medical condition, and *Gordon v. County of Orange, 6 F.4th 961 (July 26, 2021)* (*Gordon II)* which established a pretrial detainee's constitutional right to adequate medical screening and direct-line of sight safety checks.

3.  Plaintiffs state a claim against the Defendants for a failure to establish policies, procedures and training which resulted in the subject incident. This is a civil action seeking damages against the Defendants for committing acts under color of law, and depriving BENAVIDEZ of rights secured by the Constitution

and laws of the United States (42 U.S.C. § 1983). Defendants COUNTY,  and DOES 1 through 10, Lynwood Jail management and employees  were deliberately indifferent by, without limiting other acts and behaviors: failing to provide medical care, failing to follow its established medical care and treatment protocol; failing to protect BENAVIDEZ from harm; failing to ensure drugs did not proliferate inside a secured jail setting, failing to provide detox treatment, failure to monitor for change of condition, failure to provide necessary and appropriate medical treatment and, failing to provide necessary and appropriate personnel necessary for the health and welfare of BENAVIDEZ, who at the time of death, was a pretrial detainee at the Lynwood Jail, in the city of  Lynwood, California. Defendants deprived BENAVIDEZ rights as guaranteed by the Fourteenth Amendments to the Constitution of the United States against cruel and unusual punishment.

4.  Defendants COUNTY and personnel in charge of operating and managing the Lynwood Women's Jail, medical officials, management and employees violated the BENAVIDEZ constitutional rights and were deliberately indifferent by, without limiting other acts and behaviors: (1) deliberately ignoring and failing to heed to BENAVIDEZ' serious medical condition, to wit, obvious signs of withdrawals and decompensation including symptoms of medical distress, physical pain and alcohol withdrawal (2) failing to conduct 15-minute welfare checks (3) ignoring other inmates pleas to help BENAVIDEZ (4) failing to conduct regular CIWA and medical assessments (5) failing to assess BENAVIDEZ after numerous and obvious bouts of vomiting and dry heaving  (6) failing to refer to a medical doctor and failing to transfer to a hospital for diagnostic testing and emergency treatment (7) failing to provide appropriate medication to treat severe symptoms of physical pain and alcohol withdrawal (8) failing to provide necessary and appropriate personnel for the health and welfare of the BENAVIDEZ (9) failing to train jail staff in severe alcohol and drug

withdrawal assessment and (10)  failing to implement policies and procedures on symptom assessment of alcohol withdrawal. Because of the defendants' actions, BENAVIDEZ suffered debilitating physical and emotional injuries before he suffered from severe alcohol withdrawal and drug toxicity and ultimately her death, and which action constituted a clear deprivation of his constitutional rights.

## **JURISDICTION AND VENUE**

5.  This action is filed under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, to redress injuries and the death suffered by the plaintiff's BENAVIDEZ at the hands of defendants.

6.  By a government claim form dated August 29, 2024, Claimants issued to the County of Los Angeles, to its Clerk of the Board of Supervisors, a Notice of Claim regarding violations of Plaintiff's BENAVIDEZ constitutional state law rights. The claim stated the time, place, cause, nature and extent of the plaintiff's BENAVIDEZ injuries.

7.   As of October 13, 2024, the County of Los Angeles, through its Clerk of the Board of Supervisors, failed to respond to the tort claim. As such, after the "45th days" of issuance, the claim was deemed rejected by operation of law. The present lawsuit ensued within "6 months" from the date of rejection.

8.   This Court has jurisdiction over the federal civil rights claim pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367(a).

9.   At all relevant times, the BENAVIDEZ was an inmate at the Lynwood Jail operated by the Los Angeles County Sheriff's Department.

10.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

## **THE PARTIES**

11.  Plaintiff, Michael Smith, hereinafter referred to as "SMITH" is an adult child of Decedent, BENAVIDEZ. Michael Smith is acting in an individual

capacity and on behalf of BENAVIDEZ's estate as a successor.  Plaintiff resides in Los Angeles County, California.

12.    Plaintiff, Josephine Carol Sarenan, hereinafter referred to as SARENAN is the maternal grandmother of Decedent, BENAVIDEZ. SARENAN is acting in an individual capacity and as a guardian ad litem to BENAVIDEZ's three minor children, J.S., J.S and J.S. Plaintiff resides in Los Angeles County, California

13.    Plaintiffs, J.S. 1, J.S. 2 and J.S. 3 are three minor children of BENAVIDEZ and are acting in their individual capacities by and through their guardian ad litem SARENAN and in the capacities as successors in interest to the estate of BENAVIDEZ. Plaintiffs reside in Los Angeles County, California.

14.    At all times relevant to this complaint, BENAVIDEZ was a non-convicted inmate, also known as a pretrial detainee, who was housed at the Lynwood Women's jail in Lynwood, California, where she died.

15.    Defendant County of Los Angeles, hereinafter known as "COUNTY", is a governmental entity that acts through individuals to establish its policies and that is capable of being sued under federal law.

16.    The Los Angeles County Sheriff's Department is a duly organized subsidiary of COUNTY and is responsible for supervising and operating the Lynwood Jail, a women's correctional division, and ensuring the health and safety of all inmates and pretrial detainees incarcerated in its corrections facilities.

17.    Defendants DOES 1-3, hereinafter referred to as "DOE Deputies 1-3", were/are employees of the Lynwood Jail, and at times relevant to the complaint were employed in the capacity of a Los Angeles County Sheriff's jail deputies and responsible for the welfare and safety of inmates including that of BENAVIDEZ. Defendants DOES 1-3 are duly authorized employees and agents of the Los Angeles County Sheriff's Office and were acting within the course and scope of their perspective duties as jail staff in the Lynwood Jail with the complete authority and ratification of their principal, the County of Los Angeles.

Defendant DOES 1-3 are being sued in their individual capacities.

18.    Defendant DOE 4, hereinafter referred to as "DOE 4" is an employee COUNTY and stationed at the Lynwood Jail, and at times relevant to the complaint were employed in the capacity of a Los Angeles County Sheriff's jail deputy and responsible for the welfare and safety of inmates. Defendant DOE 4 is a duly authorized employee and agent of the Los Angeles County Sheriff's Office and was acting within the course and scope of their perspective duties as jail staff in the Lynwood Jail with the complete authority and ratification of their principal, the County of Los Angeles.  Defendant DOE 4 is sued in his individual capacity.

19.    Defendants DOES 5-8, hereinafter referred to as "DOES 5-8" or "Medical DOES 5-8", were/are employees of the Lynwood Jail, and at times relevant to the complaint were employed in the capacity of jail medical staff including nurses and doctors and were responsible for the medical and detox treatment of detoxing inmates. Defendants DOES 5-8 are duly authorized employees and agent of the "CHS" or Correctional Healthcare Services and were acting within the course and scope of their perspective duties as jail medical staff at the Lynwood Jail with the complete authority and ratification of their principal, the County of Los Angeles. Defendant DOES 5-8 are being sued in their individual capacities.

20.    Defendant DOE 9, hereinafter referred to as "DOE 9", is an employee in the capacity of a jail supervisor at the Lynwood jail, a subsidiary of Defendant County of Los Angeles, and at times relevant to the complaint was employed in the capacity of a Deputy supervisor and/or Sargent. The defendant is a duly authorized employee and agent of Lynwood jail and was acting within the course and scope of her perspective duties as jail staff with the complete authority and ratification of his principal, the County of Los Angeles. Defendant DOE 9 is being sued in his individual capacity.

21.    DOE 10 is an employee of defendant County of Los Angeles, and at all times relevant to the complaint was employed in the capacity of decision maker,

policy maker and ratification maker at the Lynwood Jail. They are duly authorized employees and agents of the County of Los Angeles and were acting within the course and scope of their perspective duties with the complete authority and ratification of their principal, Defendant County of Los Angeles. DOE 10 is sued in his individual and official capacity.

22.    At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant herein.

23.  At all times mentioned herein, each Defendants including DOES 1-10 were integral participants in the use of excessive force and failure to provide medical care and to report Decedent's distress, or because they failed to intervene to prevent these violations.

## FACTUAL ALLEGATIONS

24.    BENAVIDEZ was arrested and booked in the Central Regional Detention Center on April 24, 2024, at 1955 hrs. after appearing in court at the Pasadena Courthouse.

25.    BENAVIDEZ, while in Defendants' care and custody, had merely been charged with a crime and had not been convicted of anything. Accordingly, she was a pre-trial detainee, and thus guaranteed the right, under the due process clause of the Fourteenth Amendment, to constitutional level medical care.

26.    Upon information and belief, BENAVIDEZ was classified as a detoxifying inmate and relevant to this complaint, was required to be closely monitored for adverse withdrawal symptoms.

27.    On April 24, 2024, upon being transferred to the Lynwood jail, BENAVIDEZ was showing signs of detoxification from alcohol withdrawal and possible drug use. During the booking process, BENAVIDEZ was reportedly shaking and exhibiting signs of medical distress requiring medical attention. Another inmate observed her distress and offered to give her a blanket.

28. On April 25 at 0040 hrs., BENAVIDEZ had an initial intake conducted and placed in Module 2400 to a day bed for inmates needing Detox. She was initially assigned to a daybed in plain view of all the medical staff and deputies in charge of the detox housing unit comprising of eight (8) day beds in the dayroom. Additionally, upon information and belief, the detox unit also contained a nurse's office, where a nurse was stationed 24hrs a day.

29. On April 25, at approximately 2100 hrs., BENAVIDEZ was observed vomiting at various times as reported by other inmates to deputies. She was initially given 2 anti-nausea shots by medical staff including DOES 5-8. Hence, DOES 1-4, 9 and medical DOES 5-8 were or should have been alert to BENAVIDEZ deteriorating physical health. At approximately 2100 hrs., DOE 4, took her to the showers so she can clean her vomit but upon returning to her cell and despite showing signs of detox and medical distress, DOE 4 placed her hand and harm in a "chicken wing" position behind her upper back which is both unsanctioned and an extremely painful control hold. Based on video surveillance footage, DOE 4 is seen pushing and shoving her inside the cell claiming BENAVIDEZ in her distressed condition, is refusing to enter the cell and is uncooperative.

30. Instead of being returned to her day bed in plain view of medical and deputies, she was punished and placed inside a single cell unit. Based on witness observations, BENAVIDEZ was noted to be vomiting and dry heaving for many hours from April 24th until April 26th when she was found deceased the following morning[1].

31. Although DOES 5-8 assessed BENAVIDEZ for nausea, there is no indication that BENAVIDEZ was closely monitored nor assessed for CIWAs as required under alcohol withdrawal protocols.

---

[1] **An autopsy conducted by a LA County medical examiner noted severe tearing of her esophagus which resulted in 300 cc of accumulated blood inside of her stomach and upper intestines which would be consistent with prolonged bouts of vomiting**.

32.     On April 26, 2024, at 12:00 a.m., Defendants DOES 1-4 claim BENAVIDEZ refused a detox check by deputies, however, because a proper CIWA check must be conducted by medically trained personnel including DOES 5-8, a deputy who claims an inmate is refusing CIWA without the presence of a medical staff is a violation of the jails' medical refusal policy. If however, DOES 5-8 were in fact present during the purported refusal, they would still be in a position to intervene by noting objective signs of withdrawal and/or distress such as elevated respiration, paleness, vomiting, dry heaving, sweating, anxiety, agitation and overall signs of physical distress.

33.    According to Adult Correctional Health policies and procedure, if a nurse is unable to take vital signs or conduct a CIWA assessment on a patient who is showing signs of moderate to severe symptoms, then the patient must be closely monitored for change of condition in an infirmary setting or hospitalized for a higher level of care.

34.    Upon information and belief, jail sobering welfare check policies require 15-minutes checks to detoxing inmates and to monitor for signs of medical distress, signs of life such as by looking for a chest rise and descent and to immediately report to medical staff an inmate suffering from medical distress.

35.    Despite showing signs of medical distress, and in lieu of returning BENAVIDEZ to her day bed, she was placed into a single cell, with no monitoring. DOE 9, as a Sergeant supervisor in charge of maintaining order and the safekeeping of detoxifying inmate, was responsible for supervising DOES 1-4 whom in turn were responsible for conducting 15-min welfare checks on all cells including BENAVIDEZ's.  DOE 9 failed to monitor and ensure that welfare checks were properly and adequately conducted because had he ensured the monitoring was performed, DOES 1-4 and/or DOE 9 would have been alerted to BENAVIDEZ' medical distress much sooner than when she was found deceased at approximately 4:00 a.m., on April 26, 2024.

36.   Upon information and belief, the only reason DOES 1-4 were alerted to a deceased BENAVIDEZ at 4:00 a.m. was because she had a scheduled early morning court call/attendance.

37. Upon further information and belief, when found, her body was already showing signs of Rigor Mortis which meant she had expired hours earlier than when she was found.

38.   Despite showing signs of severe withdrawals, BENAVIDEZ was never assessed once from at least 9:00 p.m. to 4:00 a.m. on April 26 until a deputy is alerted to her unresponsive body and summons medical personnel.

39.   BENAVIDEZ' numerous symptoms of alcohol and opiate withdrawal were nothing short of an emergency requiring hospitalization and a level of acute care which was beyond the capabilities of the defendants. The symptoms which she endured for thirty (30) hours preceding her death had not ameliorated but rather worsened and should have been obvious not only to an untrained lay person, but certainly to the medical professionals DOES 5-8 and the jail deputies DOES 1-4 and the supervising Sargent DOE 9.

40.   The Los Angeles County medical examiner performed the autopsy of Decedent and noted several unusual injuries and conditions about her body. She was noted with very recent bruising to the left posterior leg in the form of scant hemorrhage which is consistent with a recent blunt force trauma.  The medical examiner also noted an upper gastrointestinal hemorrhage due to a linear tear of the esophagus[2] and 300 cc of blood inside of her stomach and in the upper section of her small bowel.  The esophageal tear and accumulated blood are consistent with BENAVIDEZ's long bouts of dry heaving and vomiting before her death which should have been noticed by all Defendants, DOES 1-4 and 5-8. Witnessing inmates also observed and heard her vomit numerous times from the

---

[2] Also called a Mallory-Weiss tear which is a mucosal laceration caused by forceful or prolonged vomiting, retching or dry heaving.  **Common symptoms include Hematemesis or vomiting of blood, epigastric pain.**

evening prior until she was found dead. Based on a large quantity of blood hemorrhaging from her esophageal tear, a notable amount of blood would have also been visible in her vomitus and therefore alert DOES 1-4 and 5-8 that BENAVIDEZ was bleeding internally and require urgent hospitalization.

41.    BENAVIDEZ' toxicology results also showed a high-low Fentanyl-NorFentanyl ratio level which is consistent with recent ingestion of the drug during the time she was detoxifying inside a supposedly secured medical detox housing unit. The medical examiner attributed her death to Fentanyl toxicity yet failed to reference any withdrawal symptoms nor critiqued any lack of care by any medical staff including DOES 5-8 or the lack of any monitoring preceding her death.

42. BENAVIDEZ was 39 years of age when she passed away.

## FIRST CLAIM FOR RELIEF

**DELIBERATE INDIFFERENCE TO A SUBSTANTIAL RISK OF HARM TO HEALTH -14TH AMENDMENT OF THE U.S. CONSTITUTION, (On behalf of the Estate of BENAVIDEZ Against Defendants DOES 1-3, DOE 4, DOES 5-8 AND DOES 9-10)**

43.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 42 of this Complaint with the same force and effect as if fully set forth herein.

44.    From the time BENAVIDEZ was booked into Lynwood Women's Jail until the time of his death, the Defendants repeatedly denied BENAVIDEZ proper medical care in repeated violation of her 14th Amendment constitutional rights.

45.    All Defendants were informed by BENAVIDEZ and numerous neighboring cellmates that she, BENAVIDEZ, had serious medical needs and required a higher-level-of-care. BENAVIDEZ was suffering from severe alcohol and/or drug withdrawal and complications thereof, which could have been prevented had she been monitored and promptly hospitalized.

46.  All defendants made several intentional decisions regarding the conditions of confinement involving BENAVIDEZ: defendants DOES 1-4 and 5-8 chose to ignore dire symptoms as evidenced by other inmates who unlike Defendants were helpless in addressing BENAVIDEZ's distress. Defendants DOES 1-4, and 5-8 chose to ignore signs and symptoms of alcohol withdrawals, ignored her symptoms, claimed she refused CIWA, and roughed her up using unnecessary force after a severe bout of vomiting when DOE 4 who was physically stronger than she, applied a painful chicken wing control hold and shoved her inside a cell by herself. DOES 5-8 failed to follow protocols which require medical staff to hospitalize an inmate whose alcohol and/or opiate withdrawals become unmanageable to jail medical staff. Defendants DOES 1-4 and 9 chose to ignore signs of medical distress, failed to conduct regular 15-minute checks and ignored BENAVIDEZ' welfare. If deputies were acting upon the medical staff's directions, Defendants DOES 1-4 further made an intentional decision to ignore BENAVIDEZ' obvious decompensated state and to ignore common sense which required DOES 1-4 to promptly summon a higher level of medical care rather than leaving her inside a cell, unmonitored.

47.  The decisions taken by all defendants including DOES 1-9 placed BENAVIDEZ at a substantial risk of suffering severe harm and death because every Defendant was unequivocally informed that she was medical distress, she was visibly decompensated and required a higher level of care.

48. Defendants failed to take any reasonable available measures to abate that risk, even though reasonable officials, including reasonable nurses and jailers in these circumstances would have appreciated the high degree of risk involved making the consequence of the Defendants' conduct obvious. Such available measures included conducting frequent CIWA assessments, regular 15-minute welfare checks, referring to a higher level of care, close observation, summoning a physician, transporting to an emergency room, and refraining from using

excessive force on an already physically distressed BENAVIDEZ. Defendants also failed to ensure the detox housing unit was free from drugs being smuggled inside placing all detoxifying inmates at a greater risk of danger from overdosing.

49.    All the Defendants knew there was a substantial risk to BENAVIDEZ health if her alcohol/opiate withdrawal symptoms went untreated but repeatedly denied her appropriate medical treatment.

50.    It was objectively unreasonable for the Defendants to ignore the numerous objective signs and symptoms of a serious medical condition, which said symptoms lasted at least seventy-two (30) hours. Any diligent nurse would have been apprised of the serious impending medical condition, and promptly summoned paramedics to hospitalize BENAVIDEZ.

51.    As a result of the repeated denial of proper medical care, BENAVIDEZ spent her time at Lynwood Women's jail suffering unnecessary and excruciating pain culminating to her death.

52.    The denial of medical treatment exacerbated BENAVIDEZ' severe alcohol/drug withdrawal symptoms to the point where her life was placed in jeopardy.

53.    The Defendants, by ignoring BENAVIDEZ in this situation and by failing to provide proper medical attention, acted with deliberate indifference to a serious health condition and to the medical needs of BENAVIDEZ.

54.    Because BENAVIDEZ was a pretrial detainee, the Defendants by their act of deliberate indifference in failing to provide medical care to treat BENAVIDEZ' serious medical condition, the conduct thereof constitutes cruel and unusual punishment in violation of the Due Process Clause of the Fourteenth Amendment of the Constitution.

55.    BENAVIDEZ' death was easily preventable.

56.    Such acts and omissions of the Defendants violated BENAVIDEZ' constitutional rights guaranteed under 42 U.S.C. § 1983, and Fourteenth

Amendments to the United States Constitution. The defendants knew that by failing to treat the urgent symptoms of opiate/alcohol withdrawal, that it would lead to a fatality, but not before BENAVIDEZ endured significant pain and agony during the period preceding his death.

57.      Accordingly, Defendants each are liable to Plaintiff Michael Smith and J.S. 1, 2 and 3 in their capacities as successors-in-interest to BENAVIDEZ' estate for compensatory, predeath pain and suffering, and loss of life and opportunity for life, and punitive damages under 42 U.S.C. § 1983. Plaintiffs also seek reasonable attorney's fees under section 1988.

**SECOND CLAIM FOR RELIEF**

**UNREASONABLE SEARCH AND SEIZURE-**

**EXCESSIVE FORCE-42 U.S.C. § 1983**

**(On behalf of the Estate of BENAVIDEZ Against all Defendant DOE 4)**

58.   Plaintiffs repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 57 of this Complaint with the same force and effect as if fully set forth herein.

59.   The unreasonable use of force by Defendant DOE 4 when he unnecessarily roughed up BENAVIDEZ by pulling her arm high up behind her back, in an unsanctioned "chicken wing" position, and shoving her inside her cell and committing other acts of excessive force, some of which were noted by the medical examiner in the form of blunt force trauma to her leg and other parts of her body, while she was already in medical distress, was bleeding internally and deprived her of her right to be secure in his person against unreasonable searches and seizures as guaranteed to them under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

60.   Defendants DOE 4 used excessive force while returning Decedent back from the showers where she attempted to clean up some of her vomit.

61.   Defendant DOE 4's actions caused Plaintiff to suffer trauma, bruising and

likely worsened her already decompensated state and alcohol/drug withdrawal symptoms.

62. As a result, Plaintiff suffered pain and suffering, bruising, a worsening of her alcohol and/or drug withdrawal symptoms.

63. Accordingly, Defendant DOE 4 is liable to Plaintiff Michael Smith and J.S. 1, 2 and 3 in their capacities as successors-in-interest to BENAVIDEZ' estate for compensatory, predeath pain and suffering, and loss of life and opportunity for life, and punitive damages under 42 U.S.C. § 1983. Plaintiffs also seek reasonable attorney's fees under section 1988.

64. The conduct of Defendant DOE 4 was willful, wanton, malicious, and done with reckless disregard for BENAVIDEZ' rights and safety and therefore warrants the imposition of exemplary and punitive damages.

### THIRD CLAIM FOR RELIEF

*MONELL*-FAILURE TO TRAIN, SUPERVISE AND DISCIPLINE (42 U.S.C. §1983) (On behalf of the Estate of BENAVIDEZ Against COUNTY and DOE 10)

65. Plaintiffs repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 64 of this Complaint with the same force and effect as if fully set forth herein.

66. At all relevant times to this complaint, Defendant COUNTY and DOES 10 had the duty and responsibility to train, hire, instruct, monitor, and investigate staff and discipline other Defendants as well as all employees and agents of COUNTY.

67. Defendant COUNTY knew that BENAVIDEZ was a vulnerable inmate upon her booking admission and would have suffered from an emergency medical condition and that the Lynwood jail was not equipped to care for acutely ill patients. Given the known limitations of the Lynwood jail medical infirmary, it was obvious that Lynwood jail and medical staff including DOES 5-8 would need

special training to care adequately for medically unstable patients and to assess
whether such patients should be transferred to the hospital.

68.    The Lynwood jail nursing and deputy staff had not been trained
adequately in monitoring, documenting and assessing patients' acute medical
conditions within the confines of a limited-care facility such as the Lynwood jail,
and that this failure to train led to a substantial but fatal delay in BENAVIDEZ
care, resulting in her death. Jail staff had not been trained on how to properly
recognize signs of medical distress, which is a requirement under Title 15 which
advises County jail to implement welfare checks to detox inmates at a minimum
of once every 15 min.  and to look for signs of life and/or medical distress in an
inmate.

69.    Despite COUNTY's general jail policy requiring that medically unstable
inmates be seen by a doctor and transferred to a hospital for acute care, COUNTY
had failed to train the Lynwood jail doctors and nursing staff adequately to
recognize the urgency with which medically unstable inmates must be seen and
assessed considering the Lynwood jail and limited medical facilities.

70.    Defendant COUNTY had a policy of relying on medical professionals
without training them on how to implement proper procedures for documenting,
monitoring, and assessing inmates for medical instability within the confines of
the Lynwood jail amounting to deliberate indifference.

71.  Defendant COUNTY including the Lynwood jail had in fact experienced
prior in-custody deaths, many of which as a result of substance withdrawals
and/or drug overdose in the year 2023-24 which would have placed the COUNTY
on notice of a constitutional obligation to provide close monitoring of medically
ill inmates and to ensure drugs aren't smuggled in through their jail personnel
including bribed jail deputies.

72.    As a result of the COUNTY's failure to adequately train and implement policies, BENAVIDEZ was caused undeserved pain and agony all culminating in her death.

### FOURTH CLAIM FOR RELIEF

*MONELL-* UNCONSTITUTIONAL CUSTOM, POLICY

OR PRACTICE (42 U.S.C. §1983) (On behalf of the

Estate of BENAVIDEZ and Against Defendant COUNTY)

73.    Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 72 of this Complaint with the same force and effect as if fully set forth herein.

74.    On and for some time prior to April 4-6, 2024, (and continuing to the present date) Defendants COUNTY deprived Plaintiffs' BENAVIDEZ of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with reckless and deliberate indifference to the rights and liberties of Plaintiffs' BENAVIDEZ and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized county custom, policy, and practice of: Acting deliberately indifferent to the serious medical needs of inmates and newly booked and detoxifying inmates when defendants failed to take any meaningful corrective measures despite being previously placed on notice of their egregious practices resulting in prior deaths. The following is a list of *Monell* violations:

(a)  Failing to implement policies and procedures on basic symptom recognitions and assessment of inmates who are in medical distress and suffering from severe alcohol/ opiate withdrawals including symptoms of severe vomiting, dry heaving, bloody vomitus, compromised functioning.

(b) Routinely failing to train detention staff on the symptoms and assessment of inmates suffering from severe alcohol withdrawal, and who are visibly decompensated and in medical distress.

(c) Failing to provide pain relief medication placing inmates at risk of obtaining illicitly smuggled Fentanyl which also acts as a pain-relieving narcotic but with an increased risk of fatal overdose

(d) Inadequately supervising, training, controlling, assigning, and disciplining employees including COUNTY Jail staff.

(d) Routinely neglecting and ignoring gravely ill inmates and enabling the custom and practice of medically distressed inmates to rely upon themselves to seek emergency medical treatment.

(e) Engaging in the custom and practice of discriminating and withholding emergency medical treatment until an inmate is at a near-death condition.

(f) Routinely preventing inmates access to medical doctors, due to a custom and practice of a failed booking policy.

Because of the aforementioned policies and practices of Defendants and COUNTY, Plaintiffs have suffered the loss of their son and father, BENAVIDEZ.

75.   Defendant COUNTY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies.  Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs and other individuals similarly situated.

76.   By perpetrating, sanctioning, tolerating, and ratifying outrageous conduct and other wrongful acts, Defendants COUNTY, acted with an intentional,

reckless, and callous disregard for the well-being of BENAVIDEZ and his constitutional as well as human rights.

77.    Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants COUNTY were affirmatively linked to and were a significantly influential force behind the BENAVIDEZ death.

78.    As a direct and legal result of Defendants' acts, Plaintiffs have suffered damages, including, without limitation, past pain and suffering, loss of life, loss of opportunity for life, and compensatory damages. Such damages including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained. Additionally, Defendants are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

79.    As a direct and proximate result of the defendants' aforementioned conduct, the Plaintiffs, successors-in-interest for BENAVIDEZ, set forth that the defendants are liable to them for damages including but not limited to funeral and burial related expenses, and damages to provide for the Plaintiffs' deprivation and injury as a result of the loss of the BENAVIDEZ support, company, comfort, counsel, familial relations, aid, association, care and services.

<u>**FIFTH CLAIM FOR RELIEF**</u>

**SUPERVISORY LIABILITY PER 42 U.S.C. 1983**

**(Asserted On behalf of the Estate of BENAVIDEZ Against Defendant DOE 9)**

80.    Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 79 of this Complaint with the same force and effect as if fully.

81.    At all times relevant to this complaint, DOES 1-4 were acting under color of state law as correctional deputies, and as subordinate and under the supervision of ranking supervisor to DOE 9.

82. On April 25-26, 2034, Defendant DOE "9" was aware that BENAVIDEZ had been detoxifying from alcohol/drugs and required to be monitored every 15 min. staggered checks and was aware that she was actively suffering from signs of severe withdrawals and had not been given any medication assistance treatment. Despite being on notice of an actively and acutely distressed BENAVIDEZ, DOE 9 fails to ensure that DOES 1-4 conducted their 15 min checks on BENAVIDEZ and allowed DOE 4 to house in BENAVIDEZ into a single cell with minimal supervision. Because in-custody use of force incidents is reported to supervisors, DOE 9 should have been alerted to DOE 4's use of force and intervened to ensure BENAVIDEZ would be given proper monitoring, medical care and not remain out of sight inside her cell. DOE 9 should have acted to reprimand DOE 4 for the unnecessary use of force against a detoxing BENAVIDEZ who was showing signs of distress.

83. DOE 9 failed to ensure a collaborative safety plan was made with BENAVIDEZ prior to being thrown inside a cell knowing that she was already decompensated and would decompensate further if left unattended, unmonitored and without medical treatment.

84. DOE 9, who was acting as a shift supervisor in charge of deputies and custody staff in BENAVIDEZ' housing unit, was responsible for detoxing inmates' welfare and safety and to ensure inmates were observed and monitored regularly and frequently. DOE 9 failed to order a careful watch and monitoring of BENAVIDEZ and failed to ensure that BENAVIDEZ who had exhibit signs of severe dry heaving and bloody vomit had access to medical staff. DOE 9 also failed to ensure that actively detoxifying inmates were promptly reported to medical staff so they would be assessed and treated with medication and treatment.

85.  Defendant DOE 9's conduct was so closely related to the deprivation of BENAVIDEZ' right to be the moving force that caused the constitutional violation, injuries and death.

86.  As a direct and legal result of Defendants' acts, Plaintiff and Decedent have suffered damages, including, without limitation, past and future pain and suffering, and compensatory damages.  Such damages including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained. Additionally, Defendants are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

## SIXTH CLAIM FOR RELIEF

## 14th AMENDMENT-INTERFERENCE WITH FAMILIAL RELATIONS (Asserted by all Plaintiffs Against Defendants DOES 1-3, DOE 4, DOES 5-8, DOES 9-10)

87.    Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 86 of this Complaint with the same force and effect as if fully.

88.    BENAVIDEZ had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in her children Plaintiffs MICHAEL SMITH, J.S.1, J.S.2 and J.S.3's familial relationship with their mother, BENAVIDEZ.

89.  Plaintiff MICHAEL SMITH had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with his mother, BENAVIDEZ.

90.   Plaintiff J.S. 1 had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with her mother, BENAVIDEZ.

91.   Plaintiff J.S. 2 had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with her mother, BENAVIDEZ.

92.Plaintiff J.S. 3 had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with her mother, BENAVIDEZ.

93.   The actions of Defendants and DOES 1-10, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of BENAVIDEZ and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

94.   As a direct and proximate result of these actions BENAVIDEZ experienced pain and suffering and eventually died. Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with BENAVIDEZ.

95.   As a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of BENAVIDEZ, and will continue to be so deprived for the remainder of their natural lives.

96.   As a result of their misconduct, Defendants COUNTY, DOES 1-10, are liable for BENAVIDEZ injuries, either because they were integral participants in the use of excessive force and failure to provide medical care, or because they failed to intervene to prevent these violations.

97. Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of BENAVIDEZ and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

98.   Plaintiffs bring this claim both individually and seek wrongful death and 14th amendment parental rights damages under this claim. Plaintiffs also seek punitive damages and attorneys' fees under this claim.

## SEVENTH CLAIM FOR RELIEF

### NEGLIGENCE per G.C.  sect. 820 et seq. (Against Deputies DOES 1-4, DOE 9 and COUNTY)

99.   Plaintiffs repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 98 of this Complaint with the same force and effect as if fully set forth herein.

100.      Defendants DOES 1-4, and supervisor DOE 9, and each of them, have a duty to operate and manage the Lynwood Jail in a manner so as to prevent the acts and/or omissions alleged herein. Said defendants owed BENAVIDEZ, as a detoxing inmate in defendants' custody, care and control, a duty of due care to protect her health and physical safety.

101.      Defendants DOES 1-4, and supervisor DOE 9, were negligent and their conduct fell below a reasonable standard of care when they failed to discharge their duties as jail deputies and supervisor to BENAVIDEZ. It was foreseeable that because of Defendants' acts and omissions, as described above, BENAVIDEZ' symptoms of severe alcohol and opiate withdrawal would worsen, resulting in her physical injury, suffering, and death. Defendants' breach

proximately caused injuries and damage to BENAVIDEZ as Plaintiffs claim herein.

102.    Defendants DOES 1-4 and DOE 9 were further responsible to ensure the detox housing unit was free and secured from any illicit drugs potentially exposing inmates to the risk of fatal overdose and/or medically unmonitored self-medicating.

103.    When drugs such as fentanyl proliferate in an LA County custody settings, the problem is not so much as civilians smuggling drugs as much as insider deputies whom no one suspects of smuggling drugs but who stand to stand make a lot of money for their criminal conduct. In fact, several County of LA correctional deputies have recently been indicted after sting operations revealed they had conspired with jail gang members to smuggle fentanyl and other drugs in exchange for financial gain. As such, COUNTY was fully aware that their own deputies conspired to smuggle drugs inside the Lynwood jail setting. However, as of the date of BENAVIDEZ no effort has been made by COUNTY officials to ensure not just the general visitors are body scanned/searched for contraband but also the custody personnel.

104.    As a direct and proximate result of the defendants' conduct, the Plaintiffs set forth that the defendants are liable to her for damages including but not limited to funeral and burial related expenses, and damages to provide for the Plaintiff's deprivation and injury because of the loss of the BENAVIDEZ support, comfort, counsel, familial relations, aid, association, care and services.

## EIGHTH CLAIM FOR RELIEF

### BANE ACT C.C. 52.1 Et Seq. (State)

### (Asserted by Plaintiff SMITH, J.S. 1,2,3 and on behalf of the Estate of BENAVIDEZ Against COUNTY, DOES 1-10)

105.    Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 104 of this Complaint with the same force and effect as if fully set forth herein.

106.    California Civil Code, Section 52.1 (*the Bane Act),* prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights. However, under *Reese v. Cnty of Sacramento, 888 F.3d 1030, 1042-4043 (9th Cir. 2018),* the Bane Act <u>does not require</u> the "threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation Alleged.

107.    Specific intent does not require a showing that a defendant knew he was acting unlawfully; reckless disregard of the right at issue is all that is necessary [3]*Luttrell v. Hart,* 2020 WL 5642613.

108.    On information and belief, DOES 1 through 3, DOES 4, DOES 5-8, and 9, while working for the COUNTY and acting within the course and scope of their duties, denied BENAVIDEZ necessary healthcare that could have prevented her death. All defendants were deliberately indifferent toward BENAVIDEZ when they chose to ignore her critical condition and instead chose to treat her as another general population inmate in perfectly good health when they ignored her noticeable signs of distress and left her in her cell in rigor mortis.

109.    When Defendants committed the above acts, they acted with the specific intent required under the Bane Act. Defendants intentionally and spitefully committed the above acts to deny BENAVIDEZ the necessary healthcare that could have prevented her death.

---

[3] Per *Luttrell*, if a Plaintiff adequately pleads a claim for deliberate indifference which requires a pleading of reckless disregard, then he was sufficiently alleged the "intent" element required for the Bane Act. Under *Reese*, "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of that right. Some courts such as *Polance v. California 2022 WL 1539784, at*4 (N.D. Cal. May 16, 2022)* have deemed the application of the Bane Act appropriate when there is a showing of deliberate indifference toward correctional inmates ("observing that "defendant who acts with deliberate indifference toward an inmate may satisfy the 'threat, intimidation, or coercion' element, as the custody context makes that violation especially coercive" and collecting

110.   On information and belief, BENAVIDEZ reasonably believed and understood that he was being denied the right to adequate healthcare.

111.   Defendants successfully interfered with the above civil rights of BENAVIDEZ and Plaintiffs.

112.   The conduct of Defendants was a substantial factor in causing Plaintiffs' harm, losses, injuries, and damages.

113.   Defendants COUNTY is vicariously liable under California law and the doctrine of *respondeat superior for* DOES 1 through 3, DOES 4, DOES 5-8, and 9 conduct of Defendants that was malicious, wanton, oppressive, and accomplished with a conscious disregard for. BENAVIDEZ and Plaintiffs' rights, justifying an award of exemplary and punitive damages as to the defendants.

114.   Plaintiffs bring this claim individually and aas a successor-in-interest to the BENAVIDEZ, and seek survival damages under this claim. Plaintiffs also seek punitive damages and attorneys' fees under this claim.

<u>**NINGTH CLAIM FOR RELIEF**</u>

**FAILURE TO SUMMON MEDICAL CARE PER**

**G.C. §845.6 AND §844.6 (Against all Defendant**

**COUNTY, and DOES 1-4, 9)**

115.     Plaintiffs repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 114 of this Complaint with the same force and effect as if fully set forth herein.

116.      California Government Code § 845.6 creates an affirmative duty for jail staff "to furnish or obtain medical care for a prisoner in his custody." BENAVIDEZ desperately required prompt medical attention from Defendants Lynwood Jail staff. Defendants had actual knowledge of BENAVIDEZ need for immediate medical care and deliberately chose not furnish BENAVIDEZ with medical care. Defendants failed to discharge the duty imposed upon them by California Government Code § 845.6. As a direct and proximate result of

Defendants' acts and/or omissions, hereinabove described, BENAVIDEZ suffered severe alcohol and opiate withdrawals and symptoms resulting in her untimely death.

117.    Defendants are liable for their employees' breach of their duty to summon required immediate medical care while acting in the course and scope of their employment under the doctrine of *Respondeat Superior*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment in their favor and against all Defendants COUNTY, DOES 1 through 3, DOE 4, DOES 5 through 8, and DOES 9- 10, inclusive, as follows:

1. For compensatory wrongful death damages according to proof.
2. For punitive damages against the individual defendants in an amount to be proven at trial.
3. For federal civil rights damages under *Chaudry v. County of San Diego* including but not limited to *pre*-death pain and suffering, loss of life and loss of opportunity for life.
4. For reasonable costs of this suit and attorneys' fees per 42 U.S.C. §1988; and
5. For Damages under C.C. 52.1 under the Ralph Bane act and reasonable attorney's fees, and loadstar multiplier.
6. For wrongful death damages under the 14th Amendment Due process clause.
7. For such further other relief as the Court may deem just, proper, and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial.


Date: April 12, 2025,                    THE SEHAT LAW FIRM, PLC


By**: */s/ Cameron Sehat*** _____
Attorney for Plaintiffs